IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JEREMY A. HULCE**,

    Plaintiff,

v.

**UNION PACIFIC RAILROAD COMPANY**,

    Defendant.

Case No. 2:22-cv-1059-HL

**ORDER**

**Michael H. Simon, District Judge.**

United States Magistrate Judge Andrew D. Hallman issued Findings and Recommendation in this case on July 24, 2024. Judge Hallman recommended that the Court deny Defendant's motion for summary judgment as to Plaintiff's Title VII claim and grant Defendant's motion for summary judgment as to Plaintiff's wrongful discharge claim.[1]

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court

---

[1] Plaintiff conceded in his response to Defendant's motion for summary judgment that his wrongful discharge claim is preempted by Oregon Revised Statutes § 659A.885.

PAGE 1 – ORDER

shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Defendant timely filed an objection, to which Plaintiff responded. Defendant objects to the portion of Judge Hallman's recommendation finding that Plaintiff's Title VII claim, including Plaintiff's request for emotional damages, should proceed.

## DISCUSSION

Defendant raises five objections to the Findings and Recommendation: (1) the Findings and Recommendation relied on authority under Rule 12(b)(6) of the Federal Rules of Procedure rather than applying the Rule 56 standard; (2) the Findings and Recommendation did not adequately examine the legitimacy of Plaintiff's professed religious beliefs; (3) the mere threat of termination is not an adverse employment action; (4) Defendant could not have accommodated Plaintiff without suffering undue hardship; and (5) Plaintiff has not offered sufficient evidence that he suffered emotional distress because of Defendant's denial of his

accommodation request. The Court considers Defendant's objection to the standard applied within each specific objection and addresses the other objections in turn.

### A. Legitimately Held Religious Belief

Defendant argues that the Findings and Recommendation did not adequately examine whether Plaintiff has a legitimately held religious belief. In support, Defendant cites a case from the U.S. District Court for the Southern District of New York, in which the court held, on summary judgment, that the plaintiffs' objections to the COVID-19 vaccine were not sincerely grounded in religion. *See Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 2023 WL 6214863 (S.D.N.Y. Sept. 25, 2023). Plaintiff responds that sincerity of belief is "a question of fact." *See United States v. Seeger*, 380 U.S. 163, 185 (1965).

After the parties fully briefed their objections and responses to the Findings and Recommendation, the Second Circuit heard and ruled on *Gardner-Alfred*. 143 F.4th 51 (2d Cir. 2025). The Second Circuit reversed the district court's finding that plaintiff Diaz lacked a sincerely held religious belief. Diaz's professed religious objections to her employer's vaccination mandate were based on her belief that the COVID vaccines were made with "human cell lines derived from abortion." *Id.* at 58 (quotation marks omitted). The court noted that there was evidence in the record that Diaz had acted inconsistently with this objection in the past by taking medications "without first ascertaining whether they were 'made using aborted fetal cell lines.'" *Id.* at 59. Diaz explained this by stating that if she does not know whether a medication is manufactured using aborted fetal cells, she can use it. *Id.* The Second Circuit also acknowledged the evidence in the record that the mRNA COVID vaccines made by Pfizer and Moderna were not manufactured with aborted fetal cells but also cited the evidence that aborted fetal cell lines were used in testing during research and development of the mRNA vaccines. *Id.* Although evidence showed that Diaz also had secular objections to the vaccine's effectiveness, *see id.*

at 58-59, the Second Circuit explained that a "jury could infer that Diaz has *both* secular *and* religious objections to the Covid-19 vaccines, which a reasonable jury could interpret to mean that her objection to the vaccination policy was grounded in her sincere religious beliefs despite her concurrent secular objections." *Id.* at 64 (emphases in original).

     As to the other plaintiff, Gardner-Alfred, the Second Circuit affirmed the district court's grant of summary judgment because the evidence of her religious beliefs was "so wholly contradictory, incomplete, and incredible that no reasonable jury could accept her professed beliefs as sincerely held." *Id.* at 67. The Second Circuit stated that this was "not a conclusion [it] reach[ed] lightly," and explained that "Gardner-Alfred has provided no evidence that she has *ever* acted consistently with her professed religious beliefs other than her refusal to get the Covid-19 vaccine." *Id.* at 69 (emphasis in original). Gardner-Alfred based her professed religious objections entirely on her assertion that she believes in a "more holistic, organic way of living" and does not put "foreign, mankind medicines . . . into [her] body." *Id.* at 60 (alteration in original) (quotation marks omitted). She attributed those beliefs to her membership with the Temple of the Healing Spirit, which she claimed to have been a member of for 20 years. *Id.* "[T]he only documentary evidence tying Gardner-Alfred to the Temple of the Healing Spirit [was] a 'vaccination exemption package,'" which included a handwritten letter from the founder of the Temple of the Healing Spirit stating that "Lori Gardner-Alfred is a member in excellent standing with our Church." *Id.* at 61 (quotation marks omitted in second quotation). An investigator for the defendant in *Gardner-Alfred* purchased an identical package, including the handwritten letter stating that he was a member in excellent standing, despite having no prior affiliation with the church. *Id.* at 62. Gardner-Alfred also could not remember any details about virtual services, *id.* at 60-61, and had acted inconsistently with her professed beliefs by "tak[ing]

prescription medications, injections, and over-the-counter supplements; [having] two surgeries; and [having] implants inserted," *id.* at 62.

The Second Circuit's distinctions between the two plaintiffs are informative. Defendant emphasizes that like Gardner-Alfred, Plaintiff submitted a form exemption letter from the church to which he allegedly belonged but could not provide details about any service. Unlike Gardner-Alfred, however, there is no evidence that Plaintiff has acted inconsistently with his beliefs in the past. Thus, the facts here do not rise to the level of contradiction that the Second Circuit held warranted a grant of summary judgment.

Defendant also argues that Plaintiff's objection to the COVID vaccine is entirely secular. Defendant cites Plaintiff's testimony in his deposition that his "moral opposition to the vaccine is based entirely on [his] belief that there's fetal tissue inside the vaccine," Hulce Depo. (ECF 18-2) 46:2-5, and that even if he were told that there was no fetal tissue in the vaccine, he still would not take it because the vaccine "didn't work," "didn't prevent anything," and was "useless," *id.* 44:16-45:3. But as the Second Circuit explained in analyzing Diaz's beliefs, that Plaintiff may have secular reasons to oppose the vaccine does not mean he lacks sincerely held religious objections.[2] Thus, there is an issue of fact as to the sincerity of Plaintiff's religious beliefs, and summary judgment is not appropriate on this question.

---

[2] Defendant also cites an article stating that the mRNA COVID vaccines do not contain aborted fetal cells to argue that any religious objection by Plaintiff is based on a mistaken understanding. *See* UCLA Health, *COVID-19 Vaccine: Addressing Concerns* (last visited Aug. 7, 2025), https://www.uclahealth.org/treatment-options/covid-19-info/covid-19-vaccine-addressing-concerns. The same article explains, however, that fetal cell lines were used in developing and testing the vaccines. The Second Circuit addressed the same argument and held that summary judgment was not appropriate for Diaz's claims, even though the "uncontradicted scientific evidence in the record was that mRNA Covid-19 vaccines do not contain and were not manufactured with aborted fetal cells," because there was evidence that Diaz believed that the vaccines were created using aborted fetal cells. *Gardner-Alfred*, 143 F.4th at 59-60.

## B. Threat of Termination as an Adverse Employment Action

Defendant cites unpublished Ninth Circuit decisions to argue that the mere threat of termination is not an adverse employment action. *See Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009) ("[T]he fact that [the plaintiff] was informed that [the defendant] wanted to fire her and have her criminally prosecuted is insufficient to support her Title VII claims. It is undisputed that [the plaintiff] was never fired or prosecuted, and the mere threat of termination does not constitute an adverse employment action."); *Lewis v. United Parcel Serv., Inc.*, 252 F. App'x 806, 807-08 (9th Cir. 2007) (holding that the plaintiff did not suffer an adverse employment action where the defendant threatened to fire the plaintiff within one week if the plaintiff did not comply with a grooming policy and "[t]he threat was never carried out"). Defendant also cites an Eighth Circuit case, *Clobes v. 3M Co.*, 106 F.4th 803 (8th Cir. 2024), to argue a plaintiff's fear that they will be terminated is insufficient to establish an adverse employment action. Plaintiff responds that the threat of termination is sufficient in the Ninth Circuit. *See EEOC v. Townley Eng'g & Mfg. Co.* 859 F.2d 610, 614 n.5 (9th Cir. 1988) ("The *threat* of discharge (or of other adverse employment practices) is a sufficient penalty." (emphasis in original)), *cert denied,* 489 U.S. 1077 (1989); *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (explaining that to prove a *prima facie* case for a Title VII religious discrimination claim, the plaintiff must show that "the employer threatened her or subjected her to discriminatory treatment, including discharge").

Defendant's denial of Plaintiff's exemption request, issued on November 3, 2021, explained:

> You must be fully vaccinated by the Dec. 8 deadline. This means
> employees must receive the final dose (second dose of Pfizer-
> BioNTech or Moderna; or one dose of Johnson & Johns/Janssen)
> on or before Nov. 23. Employees who do not report their fully
> vaccinated status by the deadline *will be subject to disciplinary*

> *action, up to and including nonagreement employee termination* or agreement employee medical disqualification.

ECF 18-7 at 2 (emphasis added). Shortly after this denial, Plaintiff received an email from Defendant stating that "[u]nvaccinated employees without an approved accommodation must receive their final vaccine dose by Jan. 4, 2022. . . . On Jan. 5, in accordance with White House guidance, [Defendant] will begin making decisions to remove noncompliant employees from service." ECF 25-2 at 1. These messages state that if Plaintiff did not receive the COVID vaccine by January 2022, he would be subject to disciplinary action, including being removed from service. Plaintiff signed a letter of intent on November 19, 2021, to accept employment at another company, and began working at the other company on January 12, 2022. ECF 18-8 at 6. Plaintiff stopped working for Defendant at the same time that he began working at his new employer. Hulce Depo. 113:16-21 (stating that there was no lapse in time between Plaintiff's termination with Defendant and start of employment with his new employer). Defendant's records show that Plaintiff's employment terminated on January 13, 2022. ECF 18-3.

Although Plaintiff did not wait for Defendant to terminate him and instead promptly sought and obtained replacement employment, Plaintiff still may have suffered an adverse employment action. Unlike in *Lewis*, where the plaintiff was given a one-week deadline and was not discharged after that deadline, Plaintiff's employment ended just one week after the stated date that Defendant would "begin making decisions to remove noncompliant employees from service." *See* ECF 25-2. Plaintiff also was not merely told that Defendant wanted to fire him, as the Ninth Circuit deemed insufficient in *Hellman*, but received at least two written statements from Defendant maintaining that Plaintiff would face disciplinary action if he did not receive the COVID vaccine. A reasonable jury could conclude that Plaintiff was meaningfully threatened

PAGE 7 – ORDER

with discharge, and thus there is a genuine issue of material fact as to whether Plaintiff suffered an adverse employment action.

## C. Undue Hardship

Defendant argues that it could not have accommodated Plaintiff without suffering an undue hardship. Defendant offers evidence that Plaintiff worked with other individuals[3] and that Plaintiff could transmit COVID to his coworkers. Plaintiff responds that Defendant has not shown that "a burden is substantial in the overall context of [Defendant's] business." *See Groff v. DeJoy*, 600 U.S. 447, 468 (2023). For example, Plaintiff argues that there was no discussion about potential accommodations, such as wearing an N95 mask when near coworkers or coordinating so the coworkers were never in physical proximity, and that Defendant did not present evidence that all its conductors were vaccinated.

At this stage of the proceeding, Defendant has not submitted sufficient evidence to establish that it would have suffered an undue hardship from accommodating Plaintiff. As discussed in the Findings and Recommendation, neither party submits evidence of the available accommodations for unvaccinated conductors, such that there are triable issues of fact as to whether Defendant could have accommodated Plaintiff. Although Plaintiff admitted in his declaration that he typically "worked on a train with one other person," he stated that he and the other worker "would only come near each other when using the bathroom or boarding the train." ECF 26 ¶ 9. Therefore, a reasonable jury could find that Defendant would not have suffered undue hardship from accommodating Plaintiff.

---

[3] Defendant cites Plaintiff's statement that he "observed many of [his] coworkers become sick with COVID-19 both vaccinated and unvaccinated." ECF 26 ¶ 9. This statement does not necessarily mean that Plaintiff worked in close proximity to these coworkers, but could show that Plaintiff observed gaps in the schedule or absences of coworkers with whom he worked at a distance.

**D. Emotional Distress**

Defendant contends that Plaintiff's declaration is insufficient evidence that Plaintiff suffered emotional distress.[4] Plaintiff responds that within the Ninth Circuit, his testimony is sufficient to sustain an award of emotional damages. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000) (explaining that emotional distress damages may be awarded based solely on testimony and collecting cases).

The Ninth Circuit has held that a plaintiff's "testimony alone is enough to substantiate the jury's award of emotional distress damages" where the plaintiff testified that he was "troubled," "couldn't believe" that he had been terminated, and that the termination "very, very hurt [his] dignity and reputation" and "ruined [his] future business." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040-41 (9th Cir. 2003) (quotation marks omitted); *see also Bell v. Williams*, 108 F.4th 809, 834 (reiterating that "testimony alone can support compensatory damages for emotional distress and pain and suffering" and citing *Zhang*). Plaintiff stated at his deposition and in his declaration that he suffered stress and despair because Defendant denied his vaccine exemption request, including blows to his mental health and self-esteem. These statements are like the testimony that the Ninth Circuit in *Zhang* held was sufficient to support a jury award and thus are sufficient to defeat Defendant's motion for summary judgment.

---

[4] Defendant also argues that Plaintiff's resignation—not the denial of his accommodation request—caused Plaintiff's alleged emotional distress, and thus Plaintiff's alleged emotional distress is untethered to the alleged Title VII violation. But Plaintiff states in his declaration that he was "in despair" when Defendant denied his vaccination exemption request because Defendant had told him in writing that he would be disciplined and terminated if he did not get the vaccine. ECF 26 ¶ 22. Further, as discussed above, there is at least a genuine dispute of material fact as to whether the threat of termination was an adverse employment action, such that a reasonable jury could find that the alleged emotional distress associated with finding a new job stems from the denial of Plaintiff's vaccine exemption request.

PAGE 9 – ORDER

## CONCLUSION

The Court ADOPTS the Findings and Recommendation, ECF 30. The Court GRANTS IN PART Defendant's Motion for Summary Judgment, ECF 18. The Court grants summary judgment as to only Plaintiff's claim for wrongful discharge. In the interest of judicial efficiency and economy, if Defendant believes that it has additional undisputed evidence of undue burden sufficient to address the deficiencies identified in the Findings and Recommendation and this Order, Defendant has leave to file an additional motion for summary judgment on this issue.

**IT IS SO ORDERED.**

DATED this 12th day of August, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge